Good morning. May it please the Court. I am here this morning with Guy Beckett. I'm Gene Boland. We represent the Coles, the Judith Cole, Louise Michaels, David Johnson, in this appeal. They were the plaintiffs in the trial court. I think the analysis with this case must begin with the Consumer Protection Act, which was enacted in Washington in 1961. We are, of course, applying Washington's substantive law in this case. The legislature found that the CPA was inadequate for purposes of regulating the sale and distribution of vehicles in Washington. So the legislature enacted the Auto Dealers Act, RCW 4670. The Consumer Protection Provisions of the Auto Dealers Act are found in Section 180, Sub 1, and they provide that it is a violation of the Auto Dealers Act to disseminate information in the sale of vehicles which is false, misleading, or deceptive. Those three predicates are very, very close to the CPA itself, which prohibits deceptive and unfair conduct. Now, all of our clients filed their claims more than one year after they bought these RVs brand new. Can I stop you for a minute? Are you relying on the failure to disclose or the dissemination of false, misleading, or deceptive information? The failure to disclose, but I think that there is some overt deception in the way these RVs are marketed. Anybody that's looking at one of these RVs to buy would never presume that they contain health hazards, that in the ordinary use of the RV, you will risk substantial health hazards, particularly if you're elderly, if you have a history of respiratory problems, or if you're young children. No consumer would assume that looking at a Keystone RV's marketing materials. But the greatest crime, of course, is the omission. Keystone's failure to expressly and meaningfully disclose to consumers that their RVs have a long history of warranty claims involving moisture and water intrusion, which causes mold. Obviously, the company relies on the owner's manual, which is posted online and accessible to the public, as filling that gap. What is your position on that? Since 1971, Washington has adopted the law of Berg v. Strom in the interpretation of disclaimers. Berg v. Strom involved the sale of a vehicle by a dealer, but I think the analysis is substantially the same involving a manufacturer, because it's all about putting a consumer on notice of a disclaimer. That is, the other parties attempt to disclaim liability for the failure to do something, or for doing something, in the event of an overt deception. So, the Auto Dealers Act applies to RVs. It applies to all. I thought the Auto Dealers Act, the problem was your statute of limitations problem. Oh, we do, but that's the Steel Predicate Doctrine, and the Steel Predicate Doctrine provides that the ADA, the Auto Dealers Act, has a one-year statute. The CPA has a four-year statute of limitations, but that was reconciled. It's been reconciled by numerous courts, eight, I believe, that are cited in our briefing, and the Steel Predicate Doctrine provides that where a violation of the ADA occurs that is over the statute of limitations, then you can apply that provision in the Auto Dealers Act to establish a per se violation of the Consumer Protection Act. And that is most, I think that the latest treatment of that by an appellate court in Washington is Young v. Toyota. Young v. Toyota was, of course, there's an appellate court decision on that. It was substantially affirmed by the Supreme Court with some modification in September of 2020. But the appellate court addressed steel predicates, and that's been the law in Washington since, I believe, the last 10 years or so, starting with Walker v. Wenatchee Truck and Auto Outlet. Right, but if you're relying on that, then we're back to the ADPA, and that requires the dissemination of false, misleading, or deceptive information. Right. Dissemination as opposed to the omission of. Right. So we can break this down, but for the ADPA, what is your best argument that that keystone disseminated false, misleading, or deceptive information? Well, numerous courts have held that an omission can apply. Now you're back to omission, but the ADPA requires dissemination of, doesn't it? That's what you answered earlier. Right, right, right. But I believe the dissemination of an omission is equal to the dissemination of an overt deception. Pardon? The dissemination of an omission? Yeah, that is the distribution of marketing materials without including a disclosure of disclaimers. Okay, so now we're talking about the manual or the website? Yes. So what they did, I'm just trying to get my arms around your argument. Okay. That under the ADPA, they affirmatively disseminated something that was, I guess, deceptive or misleading because it didn't tell the whole story. Is that? Right. Okay. Right. And I think you've got to look at the all-important case of Deegan v. Windermere, which is an appellate court case in Washington, which sort of corrals all of the prior cases involving omissions. It's not the case loss so much, sir, but it's the evidence of trying to figure out what you think they did or didn't do. Right. Your briefing puts a bunch of stuff into the record, and when I look at the owner's manual, there are disclaimers there. Yes. And your argument now under the ADPA, we're not to the CPA yet, but under the ADPA, relying on the stale predicate doctrine, right? Right. Is that that manual omitted something that needed to be disclosed? Substantial information involving the safety, the use, the utility, and the value of these RFPs. Everything that somebody would think about. There is a lot of information that is in there. I'm sorry. One more time. There's quite a lot of information that is in there. There is. Aside from disclaimers, I mean, there's information, there's advice, and so on. Right. And there's certainly an explanation of what the formaldehyde problem is. There's an explanation of what the mold problem is, where it comes from, how to avoid it. There's disclaimers of living permanently in the vehicle. It doesn't say, it says it's not a good idea, and it says if you're going to do it, you should do this, not the other thing. So what exactly is the problem? That's just the start of the disclosure, is mentioning the words mold and formaldehyde and mildew and prolonged occupancy and canceling your warranty if you use it for residential purposes. But if you dig into those disclosures a little bit, Berg v. Strom says that those disclosures must be made before the purchase occurs. Now, that occurs in comparable cases involving personal injury of dangerous products that have labels on products. So, for example. Well, those are failure to warn cases, right? Yeah. So why would not Keystone attach a permanent label to the door of the RV? Well, I didn't quite finish my answer. I'm sorry. The owner's manual is deficient for several reasons. One, there's no evidence that anybody ever reads an owner's manual, particularly before they buy a vehicle. They refer to it, but they don't read it cover to cover. But if we're focusing on the ADPA now rather than the CPA more generally. Okay. The ADPA, as Judge Christian was saying, is about false or it's about the information that is conveyed and what's wrong with it. Yes. Right? Yes. Okay. So it's not about the labels that aren't there. It's about why the or whether anybody reads the owner's manual. And people may not read ads either. The question is, what is wrong with the information that is conveyed? Nobody can figure out what it means, including company executives. The three persons, company executives all, that were designated as speaking agents could not explain the disclaimers. They couldn't explain what a health hazard was. They couldn't explain whether mold was toxic or not. They couldn't explain whether formaldehyde was a human carcinogenic. And they had no idea what prolonged occupancy meant. If the company's own executives don't have a clue what the disclaimers mean, how can Keystone possibly argue that consumers should know this? And when Judge Zille was confronted with this in our motion for reconsideration, he just sort of threw up his hands and said in his decision, well, the disclaimers speak for themselves. They speak for themselves. And so there's no evidence anywhere in the record that anybody understands the disclaimers, even from Keystone itself. Keystone never submitted a single declaration from anybody saying, I know what these mean. Not one. And, in fact, it goes just the other way. The company executives said, we have no idea what these mean. But I looked at this part of the testimony and Judge Zille's ruling. The district court said they speak for themselves, I think, as you indicated. And it seems to me the disclaimers do. If we take formaldehyde, for example, it says that formaldehyde sort of, I'm going to summarize shamelessly, but typically isn't harmful, but it can be in some individuals, which seems to speak for itself. And then the executives that were deposed, I think what they were saying is that, and it's not surprising, it's beyond their area of expertise, and they couldn't say more specifically what formaldehyde does or how it is harmful. So that didn't strike me as persuasive. Well, Dr. Ferris, who was our plaintiff's expert and filed declarations in support of our motion for certification, and we relied, again, on his testimony and opposition in the motion for summary judgment, testified that it's a human carcinogen, that nowhere does that appear anywhere in any literature. The word carcinogen. Carcinogen. Yep. And nor does, he also testified that the warning appeared to him to be inadequate given the gravity of the harm that consumers would suffer. Ordinarily, wouldn't you, if you were trying to prove what an ordinary consumer would think of this, you would have some survey of what ordinary consumers think of this. You didn't have such a survey. Well, right, because this isn't a personal injury action. My clients are only seeking, our clients are only seeking economic damages. And the point is the- What's the relevance of that? Your main complaint seems to be that despite the fairly extensive disclosures in this document, an ordinary consumer would not understand the degree of danger that they were being exposed to. Yes. Right. Did you go to a bunch of ordinary consumers and ask them what they understood this to mean? No, we didn't do that. But I think it's important to appreciate that the, and most of us can understand this as just a matter of common sense, that if you're buying a product and if you happen to be vulnerable to elements, chemicals, or the use of the product, then you should be able to make that decision, not the manufacturer making it for you. You should be able to make it. Yes, and if you're vulnerable to mold and you read this document that says there's, you know, there's likely to be mold here, and mold is not good for you, why isn't that enough for you to put you on notice that you better worry about it? The missing element is how often Keystone receives complaints about water intrusion and rain intrusion in these RVs because of manufacturing defects. If you read the declarations and depositions of the three plaintiffs and their 23 supporting declarants, virtually everyone experienced the defect, the specific defect of moisture intrusion. And I think it's on page 13 of the manual. The problem is that they didn't say how often this happens? I'm sorry? The problem is that they didn't convey how likely this is to happen? Well, there... In the document that you're, in the main document. No, the main point is that Keystone doesn't tell you that it's the result of manufacturing defects. Keystone would have you believe, and you're about to hear, that all this moisture is the result of condensation. What difference does that make? I mean, if you have a problem and they're telling you that this can happen, whether it's the result of a defect or whether it's just the result of building a thing like this, whether there's a mistake or not a mistake, if this is going to cause you a problem and you know it, then that's enough. You need to know about buying it. Why do you care whether it's a defect or a built-in problem? Because the moisture that's created by condensation from breathing can be cured by opening windows, the vents on the RV. Nothing can cure a gallon of water pouring into your RV during a rainstorm, which is essentially what David Johnson describes in his declaration and his deposition. And there are worse descriptions of that from the 23 Declarant, saying that the water is everywhere. Now, as I was saying on page 13 of the manual, Keystone itself says where there's moisture, there's mold. So this is an issue that Keystone has absolute control over. I mean, I'm really, really trying to understand because there may be something in this. I'm just trying to understand it. So the problem is they didn't disclose that there's likely to be water damage, not just mold. They didn't disclose the astounding frequency that mold occurs as a result of manufacturing defects. It is not an accident that these 23 Declarants and three plaintiffs all experienced the same or very, very similar problems with mold and mildew and formaldehyde. They all experienced classic symptoms, which Dr. Ferris describes, the classic symptoms of formaldehyde poisoning or excessive exposure to formaldehyde and to mold, which is toxic. And you probably remember there is no minimum threshold. There is none, no minimum threshold for people who, according to Dr. Ferris, who are vulnerable to mold or these mold and formaldehyde. I see my red light is blinking. It is blinking, and it's my job to tell you that you're over your time. For planning purposes, we'll put another minute on the clock. Thank you, Your Honor. Thank you, Your Honor. Back again. May it please the Court, Phil Talmadge here representing Keystone RV Company. Mr. Boland has presented to the Court what amounts to a personal injuries case, but this is a case involving the Washington Consumer Protection Act and the Automobile Act that the Court has referenced. The district court here, through two experienced judges, correctly addressed the procedural and substantive aspects of the case. Judge Zille properly concluded that the appellants failed to establish a Washington Consumer Protection Act case, both because the Keystone owner's manual and website was not unfair or deceptive as to any of the issues we're talking about on water condensation, on mold, on formaldehyde, on prolonged RV occupancy, on the limited warranties that were involved. And there was no injury approximately resulting to the appellants from this alleged deceptive information because they didn't read anything in the owner's manual and didn't access the website. Can I ask a question? Yes, Your Honor. Why is the owner's manual a pertinent document as to the pre-sale information available to these people? Well, it's... Excuse me. It's something that... May I finish? I'm sorry, Your Honor. Ordinarily, one reads an owner's manual when you're an owner. And the notion that one's supposed to be reading owner's manuals before you buy the product seems unusual. I mean, myself, I've never done it. I pick fat things in my car, but I don't read it until I buy the car. Well, it's information. I mean, let's talk about it in terms of it being website information that's made available to consumers. There have been concerns raised. Right, so I go on a website. First of all, why do I have to go on a website? I mean, I'm in a store. I'm buying a car. I'm buying a recreational vehicle. I would think that the information should be available to me there, not somewhere else, number one. Number two, I then suppose I go on the website for some reason, and I see it says owner's manual. And I say, well, when I buy the car, I'll read the owner's manual. But why should I read it now? It's information. It's information for consumers. Okay. No, it's not. It's information for owners. That's what it says on it, owner's manual. Well, it's a website that makes available to people who are owners or, for that matter, prospective owners, information about the product. It's something that's valuable, and it's something that I think it's highly responsible for a corporate defendant to do to provide that information. Well, that's fine. But why does it fulfill whatever obligation they have to provide? The AGPA, as I understand it, does depend upon there being some conveyance which is not accurate. Yeah, deceptive. As to that statute, it does appear that it matters what document you're talking about. But as to the CPA more broadly, my understanding is that there can be a deceptive act in not conveying information in a way that people are likely to find out what they're supposed to find out. And why is anybody supposed to find — I mean, if you're in the store and somebody says, well, here's an owner's manual. I suggest you read it before you buy the car. That's one thing. But that's not happening here. Nobody is telling — is suggesting that anybody read this and not conveying the information in any other way. So what — well, I guess more specifically, is there — I know there's the case about the nursing home. Is that the only case in which somebody has — under Washington law there's been said to be some responsibility to look outside the conveyances by the seller of what the information is? Well, let me scroll back for a second and respond to your question, Your Honor, because it was a broad question. First of all, with respect to warnings, there is relief available for anybody that's injured by inadequate warnings. That's the Washington Product Liability Act that provides for personal injury liability in circumstances where there's a failure to warn or where warnings are inadequate. What we're talking about here is deceptiveness of any kinds of information that was conveyed to consumers. And there was nothing deceptive. So there's not a claim here for — I mean, and you may be right about this because there's been a lot of focus on this owner's manual, but I've been just a little bit — and maybe that's just the way they frame their claim as being a contention about inadequate information within its own terms. But I'm just a little baffled about why people are supposed to be reading an owner's manual. Well, it's difficult for — they're framing what is a — what they really want to make as a personal injuries case in terms of a consumer protection case. But don't because they claim they don't only want economic damages. They can't make a personal injury claim without showing that they read the manual. It could have been a failure to warn claim, except that I think it's uncontested that none of the plaintiffs read the manual. Exactly. And for that reason, they can't establish the but-for causation that Indoor Billboard requires for a CPA claim. Right. So it sort of wants to be a tort claim, but I think it can't because any of the tort claims would have required a showing of causation. Exactly. So they've got this Consumer Protection Act claim. Well, and we have in this particular case, we have instruction from the state courts. We have the Axon case. They argued Axon. They lost in Division III of the Washington Court of Appeals on all of the issues they're raising under the Consumer Protection Act. They lost on each and every one of these things. They've petitioned the Washington Supreme Court for review. But the fact of the matter is they failed to establish those elements of a CPA claim, and consistent with that, you have a whole series of cases like Axon that involve circumstances where, you know, you give information in a publicly available place and the information is accurate. They don't deny that the information is accurate, and they now claim that somehow they have a CPA claim or, you know, through a direct CPA claim or this stale auto dealer's case or statute. They just don't. They failed to establish that under cases like Axon, like Stokes, like Lohr, and a number of others. They failed to make that necessary establishment of a deceptive or unfair practice that's a natural predicate to a CPA claim under Washington law. Right. I think opposing counsel would say, and this will be your last chance to respond, so I want to raise it for him. His briefing argues that they do challenge the accuracy of the manual, right, because he says that there's information that was omitted that ought to have been omitted, that it didn't say enough about mold and the risks of formaldehyde and whatnot. What is your response to that? It sounds like an adequacy of warning argument under the Washington Product Liability Act, but not something under the CPA. What is the closest you can come under Washington law about this? You know, there's this delta between disclosing the information because we're talking about consumer protection.  Making the information available out there has to be accurate. Certainly there would be a big problem if there were inaccuracy that was disseminated. But nothing, they don't seem to be arguing that. You have Axon that's dead on point. Can you tell me one thing? I don't see an Axon case in your brief, and I don't see one of your 28-J letters. It was submitted as additional authorities under 28-J, Your Honor. I see the 28-J. I don't see Axon. Axon was provided. I think it was the first of the three 28-J letters that we provided to the court. But it's a Division III of the Washington Court of Appeals case that they argued for the plaintiffs, and it was against Keystone, and it raised all of these issues that they've raised, and the Division III Court of Appeals rejected all of them in affirming the trial court's dismissal and summary judgment. So you have Axon. You have a case like Stokes, which we've cited to the court, which is another RV case. Same kind of thing. Publicly available information, and the information is accurate. You don't have a CPA cause of action under these circumstances. The irony of their argument is, on the one hand, they bemoan the fact that, well, that owner's manual is really long, and it's really hard to read, and it's really difficult, and then on the other hand, they say, but it doesn't have enough information. You should have more. I guess they're arguing for an encyclopedia of every conceivable issue that could come up, but that's not what the CPA requires. The information that this defendant provided was accurate to the point it addressed all of the issues that they've talked about, water, mold, formaldehyde, prolonged occupancy of the vehicle. It was accurate in its description to them. Their argument that you can't have prolonged occupancy, Keystone never said that. It said if you're going to do something like live in these things for a long period of time, you have to do certain things to take precautionary steps. His argument is that, it was a minute ago, that what was not, among other things, what wasn't disclosed is that your client had received a lot of complaints about water intrusion, a manufacturing defect. What's your response to that? But why would that be in any kind of discussion about the particular problems of water or formaldehyde or any of these other things? Well, his response, forgive me for interrupting, but just so we can get this and get your response. His point is that the owner's manual says water's a problem. Where there's water, there can be mold. Air out your RV and whatnot, and his response to that was no amount of airing out is going to change the problem if there's a real incursion of gallons of water coming in from a storm. But the bottom line answer to that, Your Honor, is this. As Judge Zille ruled and as the Washington Court of Appeals ruled in Axon, that isn't deceptive. It isn't unfair. It is an accurate statement of information provided in the owner's manual and on the website regarding the issue, and therefore there is no Washington cause of action for. . . That's the delta I'm talking about because his argument is that there is a duty to disclose all of these complaints because they got a lot of them allegedly. And I'm trying to see where Washington law, and I think that's why you're pointing me to Axon, where Washington law bridges this gap, or does it? Because I'm looking for the bridge between the tort claim that requires causation and then making the information available under consumer protection statutes. The Axon case. . . Because it's accurate as opposed to sort of requiring the retailer to say more than that. Yeah, and the Axon case answers that, I think, Your Honor, directly because, in fact, in that case, it's the Keystone Owner Manual that's at issue. They argued all of the facts of coal. I mean, they argued the coal client's arguments in the context of that case, and the Court of Appeals rejected the arguments that they've advanced under the CPA. But if that weren't enough for the court, I mean, in addition to no unfair deceptive act of practice, the initial predicate for a CPA claim, you have the causation problem that they have under indoor billboard. The Young case that they cite is interesting because in Young there was no causation. The court found no CPA claim, the Washington Supreme Court in Young, because they failed to establish but-for causation. And here they can't establish but-for causation as to anything having to do with the owner's manual or the website because it is their admission that none of their people read any of this stuff. It's dead on the Steele case and a number of other cases where if you have this information that's available and you're arguing it's deceptive in some fashion or another and you don't read it, you fail to establish proximate cause for purposes of an action under the Washington Consumer Protection Act. And they fail under that element of the CPA case as well. So the bottom line here is there was nothing deceptive in the information that was provided. There was no proximate cause having been established because they didn't read this. They failed to make a CPA claim. One last thing I would address before I get off the CPA point. Counsel keeps arguing about disclaimers, and he cites a case, Berg v. Strom. Nowhere in their briefing, this is the first time he's raised it, so we haven't had a chance to actually respond to it in a formal brief in any fashion or another. But it's a liability disclaimer case. What's in the owner's manual or on the Keystone website is not meant to be a liability disclaimer in the UCC sense or any other sense. It's not an exculpatory clause. It's the provision by a responsible manufacturer of information to consumers who buy the vehicles or prospective consumers in response to Judge Berzon's question about these vehicles and what they're getting into when they use them. It's a responsible thing to do. It's not meant to be a disclaimer of liability. That it does address certain circumstances that might arise in the context of a WPLA personal injury case, sure. As to why what in Washington law supports the proposition that information on a website, especially information that is specifically not directed at prospective buyers, is information that is pertinent to determining whether there was adequate disclosure? I can't think of a case off the top of my head, Your Honor, but I don't think the medium is as important as the message. Not to reach back to Marshall McLuhan's days and all that. It seems to me your strongest position on this is that's the way they're arguing it. But if that wasn't the way they were arguing it, if they came in and said the owner's manual is irrelevant because it isn't directed at prospective consumers and it's not available on site and there's no obligation to go look at websites, what would your answer be? It might be an intriguing argument under the WPLA. Adequacy of warning. Candidly, when I was a state senator, I wrote the Washington Product Liability Act. Why is it – it's not necessarily a question of warning. I mean, my understanding is that it's a question of – what they're saying is that when you're buying the product, you should have available information. I don't know if it's a warning, but they were presenting this as a safe product and they weren't giving you all the information you needed to evaluate it. It's a different focus. If you're talking about a PI case under the Washington Product Liability Act, you're looking at the adequacy of the warning. Was there a warning? Was it adequate? And a cause of action arises under those circumstances, under that and under traditional 402A restatement principles. Different focus under the Consumer Protection Act. The focus is unfair deceptive conduct, is information that's provided in the materials, whether it's in a physical owner's manual or in an electronic format on a website. Your understanding is the CPA does not reach claims – I guess it may not matter because it may not be this case, but it doesn't reach claims of you sold me something that was not what you were representing it to be. I don't think that would be the case. I think you'd be looking at something more in the nature of a breach of contract or maybe a breach of warranty, but in terms of a CPA case, there has to be an unfair deceptive act or practice in trade or commerce as the necessary predicate to the existence of the cause of action. It's drawn directly from Section 5 of the Federal Trade Commission Act. And there has to be that necessary predicate to get there. It's a different focus for the cause of action. You don't have that here. You don't have information that was deceptive or unfair. The information that was provided was accurate and to the point about each and every one of the issues about which the appellants complained. And just as the Axon Court said no CPA claim, we would assert here that the court should rule the same way and affirm the district court's determination. So the Axon case, the holding you were talking about, is, as you say, on appeal, Axon raises two arguments. First, they argue Keystone's marketing brochure, the brochure, creates a deceptive net impression that the recreational vehicle is designed for and suitable for full-time living. They also argue that the warnings contained in the owner's manual produced by Keystone are deceptive because they minimize the true risk associated with living in the RV full-time. So I have a couple of questions. In this case, was the mold and formaldehyde argument raised? I believe it was. In this case, Axon, were they looking at the same owner's manual? Yes. Somehow this 28-J letter didn't get to me either. I just pulled up Axon. I didn't have it either. That may be our goof on our end. I'm sorry. I didn't have it either. Yeah, but we'll take a strong hard look at this case. Frank, we thought the reason the court limited the time from 20 minutes to 15 was that you had seen the Axon. Well, I don't have it in my. . . We didn't get the 28-J. . . I have the other two, but I don't have that one. Okay, we'll make sure that you get that because it was. . . Oh, we've got it.  I just pulled it right up. Yeah, I have the case, but I don't have a 28-J letter. And, of course, opposing counsel have an opportunity to respond as well. It's the same owner's manual? Yes. And it says brochure. We've been talking about owner's manual on a website. Do you know what brochure. . . I'm not sure off the top of my head, Your Honor. Okay. That makes three of us, four of us probably. I don't want to speak for Judge Forrest. He's probably all over it. But this was new news to me. So we'll hear from. . . I would like to see the 28-J letter just to make sure that. . . check with the clerk's office about whether we got it and what happened to it. Sure. It was, frankly, the two subsequent letters were sent by my office. The first one was sent by trial counsel's office, and I'll make sure that that was sent, you know, it was in the proper portal and so forth. It may be an error on our end, but our clerk's office is really good. So if we have something kinked up in the system, we want to straighten it out. Sure. Yeah, happy to do that. Thank you. Thank you. And thank you for calling the case to our attention. We did receive the letter. Sorry? We did receive the letter notifying us that they were trying to cite to Axon as part of their. . . Okay. Is it the same owner's manual in Axon? Yes, the same owner's. . . It was recently revised, but that isn't an issue in any of these cases. They've all used the same owner's manual for a decade or more. What about this, again, you now know that I've spent two minutes on Axon, just not even glancing at it, but it refers to a brochure rather than a website. Is that a distinction that matters? The brochure is a sales brochure which shows beautiful pictures of RVs. It looks like you're looking in a small condominium, but in fact it's an RV. Okay, so you're not relying on that. That's not even in your complaint, I don't think. I'm sorry, what? That's not in your complaint, is it? No, we did not discuss the net impression of brochures in the complaint. Does the Axon case talk about what you did talk about, which is the owner's manual, but also the website? Yes. Well, we didn't talk about the website in Axon. Axon was brought and heard by the court before any discovery occurred, any discovery. But it is somewhat different, because I'm just trying to get this one point narrowed down. It's the same owner's manual, but Axon talks about an owner's manual and a brochure, and you're talking here about an owner's manual and a website. Right. And Axon is distinguishable on a bunch of other bases. There weren't vulnerable people involved that contracted this or that purchased this. The problem is element number one in your cause of action is that the marketing brochure, well, I'm sorry, manual. Owner's manual. Is deceptive. Yes. Just on that, why is opposing counsel incorrect that we've got now, apparently, a Washington Court of Appeals ruling that says to the contrary? Well, one, we have filed a petition for review. Okay. We respectfully assert that's error. Two, that case is distinguishable. Three. Because you said people are not vulnerable and why else? That's not part of it, because your whole class here, since you're not looking for personal injury damages and you couldn't, why is it relevant whether they're vulnerable or not vulnerable? Because it has to do with the deception. It has to do with, in Axon, the consumers purchased the RV to live in full time. So that's, and there's part of our claim is that they, that's contained in this part of this appeal is that Keystone voids warranties. Whenever they discover, they say in their warranty, if you're found to be using your RV for residential purposes, your warranty is void. So that flies directly in the face of the fact that Keystone's claiming they don't tell people they can't live in their RV full time. They do. They do. They tell them that. If they catch you, they're going to cut off your warranty. That's if you're in the vehicle business, you know that these manufacturer's warranties are very, very valuable, particularly with products that have a long history of having defects like these RVs. So, by the way, the reason that the owner's manual is immaterial is because Keystone doesn't give those owner's manuals, nor do its dealers give those owner's manuals to consumers when they're looking at RVs and say, read this. But, counsel, you said you used the word immaterial, and my understanding of your argument is that the problem here is that they did disseminate, at least for purposes of the ADPA, they did disseminate an owner's manual, and you think it's got omissions in it. And I think there were omissions, yes. I'm saying to the extent that they did try to do it, it still failed. To the extent they did try to do it. So what's the answer to the question that I was discussing with your opponent, it would not be an ADPA violation at that point, right, because there has to be an actual misleading communication for an ADPA. No. Oh, there doesn't? No. Deegan provides, and the cases that have interpreted the CPA. No, I didn't ask you that. I was trying to go in two stages. The ADPA specifically is about misleading communications, right? Yes. So therefore, for that purpose, you do have to deal with the owner's manual. Right, but there is. Okay, so secondly, let's just go sequentially. Sorry. So secondly, is there a case law under the CPA that provides separately from a products liability case or a failure to warrant case or a breach of warranty case for a CPA violation for not providing information at all with regard to something that you're selling to somebody and you should tell them something? Deegan versus Windermere, which holds that deception by omission creates a rebuttable presumption of reliance by the consumer, thus allowing the CPA action to go forward. Deegan is very important in this appeal. And that is without regard to whether there is any communication at all? Without regard to whether. . . I'm not sure if I understand that. Well, your argument would have to then be, not that they told her something and therefore should have told her something more, but that they just didn't tell us anything. We walked in, they sold us this thing, and they should have told us X. They didn't say anything, but they should have told us X. All I can tell you from the Deegan facts is that they omitted facts that were material to the transaction, and the court upheld the plaintiff's CPA action. They found that there was a rebuttable presumption that the defendant failed to rebut, and therefore their CPA action could go forward. But that's why opposing counsel is calling our attention to Axon, because this very recent case that involves the same client, under Washington law on the CPA claim includes the holding that the brochure and the warnings contained in the owner's manual could not have misled the Axons because there's no evidence they saw them. So in this case, the one we're talking about there, I think it's uncontested that there's no evidence that the plaintiff saw either the website or the manual. Do I have that wrong? No, you have that right. But again, respectfully, Axon is error. They adopted Keystone's arguments in toto, and the reason was because there was no discovery, and I know you've read the record. Well, I don't think you've read the record. The record is probably one of the biggest cases you've had the last couple of weeks. But I spent a lot of time waiting around in it. Yeah, I'm very, very sorry to have you done that. No, no, no, no, that's our job. But I felt that all that was essential. So there was a lot of motion practice in this case trying to get discovery. There was no discovery provided, and for reasons that completely escape me, Judge Layton just refused to require Keystone to produce anything. Well, that's not really right. Virtually. There were several motions to compel, and you had mixed results. It's clear that you won some of them. Oh, no, I won. I filed a motion for reconsideration. He ordered them to produce a very small part. But they produced, and we give you all of the information in the briefing, they produced about 5% of the discovery we requested, including complaints. Well, Judge Layton did. I don't mean to split hairs with you, but he did allow discovery. You said that there was none. And there's some of the requests that he said you were just as capable of getting the information, I think complaints to third parties, as defendants were to provide it. So I didn't find it terribly persuasive that you were entirely kept in the dark about the consumer complaints. What am I missing there? You're missing that Judge Layton then denied our motion for class certification because we did not have consumer complaints, and he refused. But he had ruled that you could go get them. No. I don't know where you get them. We went and got 23 from 23 other consumers. I don't know. Is there a repository somewhere of Keystone complaints that we can go get them? I don't know. Well, I'll tell you, no, there isn't. The only place you can get them is Keystone. And Keystone has, if you look on the front page of that manual, they have a number that consumers can call. And doggone it, consumers call them and complain, and nothing happens to those calls. It doesn't initiate a complaint process or a warranty claim or anything else. It's a black hole. And we explain that in our motions. So we were completely deprived of any meaningful discovery in the case. I'm sorry to say that, but those were the facts in this case. We were very frustrated, me and the attorneys working for our clients. You're way over time. I know. I'm sorry. Let me just check. It's not your fault. Any more questions from either of my colleagues? No. It doesn't appear to be the case. Would you like to wrap up, please? That's all. I ask that the Court reverse and remand the case and reverse particularly the orders regarding Judge Layton's discovery orders, denying our motions for reconsideration, reverse and remand his order denying a class certification, reverse and remand his order on summary judgment. Thank you, Your Honor. Thank you both. We'll take this under advisement. Thank you, Your Honor. And we'll stand in recess for the day. All rise. Dearly, dearly, all persons having had business with the Honorable the United States Court of Appeals for the Ninth Circuit will now depart. For this Court, for this session, now stands adjourned.
judges: BERZON, CHRISTEN, FORREST